(No. 83-CC-0675–

ELIJAH CHILDS, Claimant, v.. THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 20, 1985.*

ELIJAH CHILDS, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This is an action in tort brought by Claimant for injuries he sustained when he was a prisoner in custody of the Department of Corrections. Claimant was sat upon and injured in a fight principally between other inmates.

Claimant's theory in this case is set out in his complaint as follows:

a. On Thursday, July 22, 1982 between 10:15 and 10:35 a.m., Claimant was hit with a steel paddle used for mixing foods, while Claimant was working on his detail in the vegetable house at the Menard Correctional Center.

b. The agent of Respondent in charge of the vegetable house had left the front door to that area opened and a gate open that was designed to keep unauthorized residents out of the vegetable house.

c. That at the time in question, three unknown residents entered the vegetable house and attacked one Morgan, a fellow inmate, who, in defending himself, threw a metal paddle at his assailants, which accidentally struck Claimant on the leg and injured Claimant.

Claimant testified that at the time of the incident in question, the door and gate to the vegetable house had been left open. (T. 3) Claimant stated, "the door or the gate was supposed to be closed and locked at all times."

Claimant further testified that the rule regarding the closing of the gate or door to the vegetable house was "to keep people from coming in, you know, who are not authorized to come in there."

Darnell Palacio, an inmate called by Claimant as a witness, testified that at the time Claimant was hurt, Respondent's agent in charge of the vegetable house was either in his office or standing outside the gate. Palacio said that both of the doors and the gate to the vegetable house were open at the time. The gates were locked when the knives were out, but the gate and door were open at the time Claimant was injured. (T. 18). Palacio stated that sometimes the gate and the door are not locked when people are running in and out picking up things out of the freezer. Palacio said it was not unusual to see people coming in and out of the vegetable house as long as the knives were not out. On the occasion in question, the knives were not out. People were coming in and out all of the time. Palacio concluded his testimony by saying that there was nothing particularly unusual about the condition of the gate and the doors on the particular occasion of Claimant's injury.

Louis Stovall, an inmate called by Claimant as a witness, testified that on the day in question, the doors of the vegetable house were left open routinely except when the knives were out. The doors and gates are open so that people can get Gatorade on hot days.

Charles Tyman, an agent of Respondent called as a witness by Respondent, testified that he was the food

supervisor working in the vegetable house at the time of Claimant's injury. Tyman indicated that the doors were open at all times except when the knives were out.

The record is barren of any proof that the men who assaulted Claimant's fellow inmate were under the control of any agent of the Respondent. There is no evidence in the record indicating that any agent of Respondent had any reason to anticipate that inmates having gained access to the vegetable house would assault Claimant's fellow inmate, thereby placing Claimant in jeopardy of injury.

It is the opinion of this Court that the question of a violation of regulations regarding the status of doors and gates to the vegetable house is immaterial to a decision of this case. This case is controlled by the holding of this Court in *Carev v. State* (1981), 35 Ill. Ct. Cl. 96, in which it was held that even where institutional procedures are violated, which violation permits one inmate to attack and injure another, no recovery can be had by the injured inmate in the absence of proof that Respondent's agents anticipated, or should have anticipated, that third persons would commit criminal acts against Claimant. In *Carev v. State*, Claimant was set upon and beaten by two other inmates. Carev's theory was that but for a violation of visiting rules by Respondent's agent, Claimant would not have been attacked and injured. The Court held that Respondent's agent negligently disregarded the regulations of the institution and that as a result thereof, Claimant was exposed to the danger of being beaten and was, in fact, beaten. However, this Court held that there was no showing that the negligence of Respondent was the proximate cause of Claimant's injuries. There, as in the case at bar, the men who assaulted the Claimant were not under the control of

Officer Tyman, and there is no showing that Officer Tyman had any reason to anticipate that any persons entering the vegetable house would assault Claimant or any other inmate.

Therefore, in the case at bar it is clear that even if this record supported the conclusion that an institutional rule or regulation had been violated which enabled the perpetrators to assault Claimant's fellow inmate thereby injuring Claimant, no recovery could be had for the reason that there was no showing that the negligence resulting from the breach of rules proximately resulted in Claimant's injury.

It is therefore ordered that this claim be denied.